## EMMA Ṡ. GREENLAW *vs.* MARY W. MILLIKEN.

### Cumberland.    Opinion November 8, 1905.

*Negligence.    Due Care.    Icy Sidewalk.    Surface Water.    Water from House Roof.*
*Evidence.*

The plaintiff slipped upon the ice on the sidewalk in front of the defendant's house and sustained an injury.  Thereupon the plaintiff brought suit against the defendant alleging that the defendant wrongfully conducted water from the roof of a part of her house upon the sidewalk which froze and rendered the sidewalk dangerous.  *Held:*  that to entitle the plaintiff to recover it was necessary for her to show that the icy condition of the sidewalk resulted from water artificially conducted upon the sidewalk, and not from surface water naturally flowing upon the sidewalk, or from melting snow which had fallen upon the sidewalk, and this the evidence fails to show.

Also *held :*  that the plaintiff was not in the exercise of due care.

On motion and exceptions by defendant.  Motion sustained. Exceptions not considered.

Action on the case to recover damages for personal injuries sustained by the plaintiff January 25th, 1904, caused by the alleged carelessness of the defendant in having water improperly drawn off and conducted from the roof of her house or bay window on said house and discharged upon the sidewalk in front of said house, and which froze and rendered the sidewalk dangerous, and upon which the plaintiff slipped and was injured.    Tried at the April term, 1905, Supreme Judicial Court, Cumberland County.    Plea, the general issue.    Verdict for plaintiff for $1,250.    Defendant filed a general motion for a new trial, and also excepted to certain rulings made by the presiding Justice.    Case decided on the motion.    Exceptions not considered.

All the material facts sufficiently appear in the opinion.

Memorandum.    This cause was argued at the June term, 1905, of the Law Court at Portland.    One of the Justices sitting at said term did not sit during the hearing upon this cause, being disqualified by reason of having ruled therein at nisi prius. · See R. S., chapter 79, section 42.

*William A. Connellan,* for plaintiff.
*Symonds, Snow, Cook & Hutchinson,* for defendant.

SITTING: STROUT, SAVAGE, PEABODY, SPEAR, JJ.

STROUT, J.　On January 25, 1904, plaintiff slipped upon the ice on. the sidewalk in front of the northeasterly corner of defendant's house on State Street, in Portland, and fell and received injury.　She claims that the defendant wrongfully conducted water upon the sidewalk, which froze and rendered the walk dangerous.　Hence this suit.　Plaintiff had a verdict, and the case is here on exceptions and motion to set aside the verdict.

Defendant's house is on the southerly side of the street, the front facing the northeast.　The ground has a rise from the sidewalk to the rear line of the house of three feet and one-half inch, and the flow of surface water from defendant's premises is toward the sidewalk and street.　The water from the roof of the main house is conducted into the sewer, and does not reach the sidewalk.　The house has a bay window, four feet and four-tenths one way and twelve feet and six-tenths the other way.　The roof of the bay window pitches each way, half the drainage going south and half north.　At ·either end of the bay window roof is a conductor, with a one inch opening. It is only the northerly half of the bay window roof that by any possibility could discharge water to reach the sidewalk, at the place of injury.

From the front of the bay window to the granite curbing next to the sidewalk is seven feet and seven inches.　On the north end of the house a driveway led from the street to the stable in the rear. From the stable to the street the ground descended.　The water from the northerly end of the bay window was conducted through an elbow or offset from the bay window to a perpendicular conductor, which terminated in a wooden spout, having its outlet on the private walk from the sidewalk by the north end of the house to its rear. This elbow or set off in the fall of 1903 had rusted out at the bottom, so that the water fell upon the grass plot at the side of the house, and would not flow into the conductor.　This condition

remained till October, 1904,——and was in that condition at the time of the accident. The observer at the Weather Bureau testified that from January 15, 1904, to the 26th, there were only two days, the 16th and the 24th, when the maximum temperature rose above thirty-two degrees. Those days were the 16th, when the maximum was thirty-three degrees, and the 24th, when it reached thirty-six degrees, and the day was cloudy. During all this time, including the 25th, the total precipitation was 79-100 of an inch. There was about one foot of snow on the ground. The sidewalk in front of the house was icy, as was also most of the sidewalks having a northerly exposure. Defendant's house was unoccupied at the time of the accident, and had been for the entire winter, and no fire had been in it. If the ice upon the walk was the result of surface water naturally flowing from the higher ground westerly, the defendant would not be liable. To entitle plaintiff to a verdict it was necessary for her to show that the icy condition resulted from water artificially conducted to the walk, and not from surface water naturally flowing there, or from melting snow which had fallen there. We think the evidence failed to show this. It seems incredible that the small surface of one-half of the roof of that bay window could hold and discharge sufficient water that fell through the opening in the rusted out arm or set off upon the snow to permeate through one foot of snow to the curbing, and then through, under or over that to the sidewalk to produce the icy condition. It is much more probable that water flowed down the driveway, not conducted from the bay window, and thus produced the icy condition.

The jury apparently drew an inference not warranted by the evidence. It is also quite apparent that the plaintiff was not in the exercise of due care.

*Motion sustained; verdict set aside.*